Garfield, J.
Plaintiff brought suit on an accident policy, claiming disability benefits from March 21 to August 21, 1938. The claimed disability was a result of injuries suffered in a fall by plaintiff on January 21, 1937. After an extended trial, a jury verdict against plaintiff was returned on March 20, 1939. Thereafter, plaintiff obtained three extensions of time to file motion for new trial or amendment thereto. In all, he was granted until May 9, 1939, within which to move for a new trial. The last extension of time was granted on April IS. Plaintiff *1257 amended liis motion for new trial on the last day allotted to him, May 9. The trial court, Judge Allen who presided at the trial, overruled the motion for new trial. Thereafter, plaintiff appealed to this court, where judgment was affirmed on May 7, 1940. See 228 Iowa 1247, 291 N. W. 866.
On June 17, 1939, plaintiff filed in the trial court a petition for new trial under section 12788, Code, 1939, on the grounds of newly discovered evidence. Plaintiff finally amended this petition on January 2, 1941, at which time he also filed an application asking that the same be heard by Judge Cooter, one of four judges of the trial court. The application alleges that Judge Allen, who presided over the jury trial, was occupied with other matters and also “that plaintiff feels he cannot secure a fair and impartial trial before Judge Allen;” that Judge Moore was fully occupied with other business; that Judge Powers “had admitted his prejudice and disqualifications,” and that there are no reasons why the petition could not be heard by Judge Cooter. On January 2, 1941, presiding Judge Allen assigned the hearing of the petition to Judge Cooter. The order of Judge Allen recites, however “that if the matter were submitted to him [Judge Allen], plaintiff would receive a fair and impartial trial.” Trial of the petition before Judge Cooter commenced on January 2p, 1941. On March 25, 1941, Judge Cooter sustained plaintiff’s petition for new trial and set aside the original verdict and judgment which this court had theretofore affirmed. Six days later, the insurance company appealed from said order to this court.
Much evidence was taken at the hearing upon the petition. The controlling facts,. as we view them, are not seriously in dispute. On April 13, 1939, 26 days before the expiration of the time granted appellee to file amended motion for new trial, appellee obtained the X-ray pictures of his neck which had been taken by Dr. Dickson in Kansas City about April 1, 1938, and which had been offered in evidence at the trial, and went to Iowa City to see Dr. Steindler. These X-rays were examined by Dr. Steindler who on the following day caused Dr. Gillies, an X-ray technician at the University hospital, to take additional X-rays. It is the contention of appellee that from an *1258 examination of the Dickson X-rays, one in particular, and the new X-rays taken on April 14, 1939, as well as from an examination of appellee, Dr. Steindler for the first time gave it as his opinion that the foramina between the third and fourth and fifth and sixth cervical vertebrae had been injured. The foramina, in the language of laymen, are openings in the vertebrae through which nerves pass. It is claimed for this alleged newly discovered evidence that Dr. Steindler would testify upon a new trial that in his opinion the vertebrae were injured so there was a pressing against the nerves passing through' these foramina or openings. Also, the claim is that Dr. Gillies and one Dr. Magnuson would confirm the opinion of Dr. Steindler.
Appellee first, consulted Dr. Steindler on June 17, 1937. From June 28 to July 15, 1937, he was at the University hospital in Iowa City under the care of Dr. Steindler. At that time X-rays of vertebrae in appellee’s neck were taken. Again, on January 6, 1938, Dr. Steindler examined appellee and more X-rays were taken by Dr. Gillies, the X-ray technician, at the direction of Dr. Steindler. Appellee was in frequent communication with Dr. Steindler from the time of the first consultation in June, 1937.
On September 10, 1937, appellee took the deposition of Dr. Steindler for use. in another case brought by him against appellant company. Appellee, a lawyer of wide experience, therefore knew what Dr. Steindler’s testimony was regarding his injuries. Appellee did not call Dr. Steindler as a witness nor was his deposition received upon the jury trial. On September 27, 1939, appellee caused to be taken the depositions of Dr. Steindler and Dr. Gillies, which were offered in evidence in support of the .petition for new trial. "We have carefully examined these depositions which form much of the basis of the claim to a new trial. 'Dr. Steindler testified that at no time prior to April 13, 1939, did appellee exhibit to him any X-rays taken by any other technician. He further testified on cross-examination :
“Q. The conclusions you have stated today with reference to the condition of Mr. Eller could have all been as definitely. *1259 stated prior to March 1, 1939, could they not? A. Yes, sir. Q. You could have given all the testimony you have given today prior to March 1, 1939, couldn’t you, had you been called upon to do so? A. Yes, sir.”
Insofar as Dr. Steindler’s opinion is not based on the X-ray pictures which were exhibited to him, he said it is largely based upon appellee’s complaints of pain rather than any objective symptoms.
The deposition of Dr. Gillies consists largely of his identifying the X-rays taken by him on April 14, 1939, and the earlier X-rays taken at the University hospital in June, 1937, and January 6, 1938, although he does give his opinion as to the X-rays.- Dr. Gillies testified that the X-rays taken on April 14 could have been taken at any previous time and that they would have disclosed the same condition. Both Drs. Steindler and Gillies were available as witnesses at all times prior to the jury trial, had they been called.
With regard to Dr. Magnuson of Chicago, whose testimony is referred to in the petition for new trial as amended, we gather from appellee’s argument that he scarcely intends to call Dr. Magnuson in the event of a new trial because of the expense in procuring his testimony. Appellee’s petition for new trial discloses that he first consulted Dr. Magnuson on May 4, 1939, five days before his time expired to file amended motion for new trial,- at which time Dr. Magnuson concurred in the findings of Dr. Steindler. Later, from June 21 to August 9, 1939, appellee was in a Chicago hospital under the care of Dr. Magnuson.
Between the time of appellee’s fall on January 21, 1937, and the jury trial in March, 1939, appellee consulted numerous dpctors, including several in Des Moines, the Mayo clinic in Rochester, and Dr. Dickson in Kansas City, in addition to Dr. Steindler. Many X-rays were taken by various doctors. The only medical testimony for appellee upon the jury trial was that of Dr. Griffin of Des Moines and the deposition of Dr. Dickson. Upon the jury trial appellant company produced eleven doctors as witnesses, many of whom stand high in the profession *1260 (as, of course, does Dr. Steindler). Most if not all of these doctors had examined appellee and the X-rays taken of the upper part of his spine' (including the X-rays taken by Dr. Dickson, one of which affords much of the basis of the claimed new opinion of Dr. Steindler) and testified at length at the jury trial with reference thereto. Some of these doctors -testified in substance that they found no injury and that plaintiff was suffering from imaginary illness.
Having some bearing is the fact that appellee had another lawsuit based on the same injuries against another insurance company which had been tried in the lower court and decided by this court prior to the jury trial in the instant case. See Eller v. Preferred Acc. Ins. Co., 226 Iowa 474, 284 N. W. 406. Much medical testimony was received in this other case, including that of Dr. Steindler, regarding appellee’s injuries.
This court has held time and again that the granting of a new trial rests largely in the sound discretion of the trial court, and that we will not interfere except in a reasonably clear case of abuse of discretion. Nevertheless, the discretion is a legal and not an unlimited one. Henderson v. Edwards, 191 Iowa 871, 873, 183 N. W. 583, 16 A. L. R. 1090. We hold that the order appealed from presents such an abuse of discretion and that the granting of a new trial was not warranted.
It is frequently said that courts do not favor the granting of a new trial because of newly discovered evidence. The rule is stated in 20 R. C. L. 289, 290, section 72, as follows:
“While newly discovered evidence, material to the party applying, which he could not with reasonable diligence have discovered and produced at the trial, is ground for a new trial, applications' on this ground are not favored by the courts, and * * m should always be subjected to the closest scrutiny.”
In 46 C. J. 244, section 216, it is said that “applications for new trials for this cause [newly discovered evidence] are not favored, especially where the * * * newly discovered evidence consists largely of conclusions * *
The order granting this new trial was not made by the judge who presided over the extended jury trial and to whom *1261 the original motion for new trial as amended (which contains no reference to newly discovered evidence) was submitted. An application for new trial should not ordinarily be passed upon by a judge who did not try the case. 20 R. C. L. 301, section 82, states: “ It is always desirable that a motion for a new trial should be heard and decided by the same judge who presided at the trial of the cause.” 46 C. J. 287, section 248, states that “* # * an application for new trial * * * should ordinarily be heard and determined by the judge who presided at the trial, except in ease of his absence or disability. ’ ’ Much of the reason for allowing trial courts considerable discretion in ruling on requests for new trial is because of the knowledge gained by them during the trial.
In our opinion the evidence relied upon is not in reality newly discovered evidence as contemplated in a matter of this kind. 46 C. J. 246, section 217, asserts “New expert testimony * * * is not ground for a new trial. ’ ’ See the following among other eases: Whittlesey v. Burlington, C. R. & N. Ry., 121 Iowa 597, 90 N. W. 516, 97 N. W. 66; Clark v. Banner Grain Co., 195 Minn. 44, 261 N. W. 596; First Natl. Bank v. Gallinger, 47 N. Dak. 489, 182 N. W. 695; Louisville & N. R. Co. v. Wright, 183 Ky. 634, 210 S. W. 184, 4 A. L. R. 478; Bishop v. Gaudio, 266 Mich. 267, 270, 253 N. W. 292. In the last cited case the Michigan court says (page 293 of 253 N. W.) : .
“After claim of appeal was filed, the little girl' was examined by doctors * * * and a motion for n‘ew trial was then made, based upon this examination and what doctors would testify to her then condition, on the ground that it was newly discovered evidence. At the trial medical experts were afforded opportunity to, and did examine the little girl and gave their testimony. We do not consider the showing made one of newly discovered evidence.”
Appellee contends it is only expert opinion evidence given in answer to hypothetical questions and. not based on examination of the injured party that the courts hold not to be newly discovered evidence. We do not so regard the authorities. Anshutz v. Louisville Ry. Co., 152 Ky. 741, 154 S. W. 13, 45 *1262 L. R. A., N. S., 87, and other cases cited by appellee are not in conflict with our conclusion.
Assuming, however, that the opinion evidence relied upon is newly discovered evidence in contemplation of law, the showing of diligence on the part of appellee is insufficient to justify a new trial on this ground. Diligence in discovering and producing newly discovered evidence is a requirement both of statute (section 11550, par. 7, Code, 1939) and of our decisions. The burden rested upon appellee to show such diligence Danner v. Cooper, 215 Iowa 1354, 246 N. W. 223; North American Natl. Ins. Co. v. Holstrum, 208 Iowa 722, 734, 217 N. W. 239, 224 N. W. 492; In re Estate of Berry, 207 Iowa 605, 223 N. W. 480.
It affirmatively appears that the testimony now offered was as available before, as it has been since the trial. See Norris v. Hix, 74 Iowa 524, 528, 38 N. W. 395. No sufficient reason appears why appellee should wait until after an adverse verdict and the disposition of his motion for new trial before producing the opinions of these doctors. Pertinent here is the statement in 46 C. J. 255, section 223 :
“That evidence was discovered soon after the trial by systematic inquiry or search usually indicates that proper diligence was not exercised to discover the evidence before the trial. ’ ’
It appears from, appellee’s petition itself as well as his own testimony that the opinions of Drs. Steindler and Gillies were expressed oh April 14, and of Dr. Magnuson on May 4,1939. This was during the time granted appellee to file amended motion for new trial which expired on May 9, and he should have presented this claimed new evidence as a part of that motion. To sanction this petition for new trial under section 12788, Code, 1939, which merely alleges matters in existence and which could have been raised at the time of filing the motion therefor under Code section 11550 would in effect permit appellee to split his claim for a new trial and try it piecemeal.
It is well settled that a new trial will not be granted for newly discovered evidence which is merely cumulative. Larson v. Meyer & Meyer, 227 Iowa 512, 518, 288 N. W. 663; Smart v. Liddle, 229 Iowa 599, 600, 294 N. W. 886; Simons v. Harris, *1263 215 Iowa 479, 245 N. W. 875. By cumulative evidence is meant evidence of the same kind to the same point. It seems to us that the opinions now relied upon are merely cumulative of a great deal of evidence upon the trial. Appellee’s original petition alleged injuries to cervical vertebrae “so as to cause pressure on the spinal cord nerves passing out through said vertebrae. ’ ’ Much expert testimony was received at the trial on this very point.
It is also elementary that a new trial should not be granted for newly discovered evidence unless a different result, because thereof, is reasonably probable. Larson v. Meyer & Meyer, supra, and cases cited. We think the opinions now offered are not such as would be likely to result in a different verdict.
The amended petition for new trial refers to the testimony of one Dr. Macklin, an osteopath, by reason of treatments given appellee commencing in July, 1940. Since this was more than 15 months after the verdict and judgment, it cannot possibly be claimed that his testimony was- discovered within a year from such judgment. See section 12790; Code, 1939, and Guth v. Bell, 153 Iowa 511, 133 N. W. 883, 42 L. R. A., N. S., 692, Ann. Cas. 1913E, 142.
With reference to the testimony of Dr. George, it is sufficient to say that appellee’s amended petition, although setting up the claimed new evidence of Drs. Steindler, Gillies, and Magnuson in much detail, makes no reference to any testimony of Dr. George. Having specified the grounds on which he relies for a new trial, appellee should be confined to those grounds.
Appellee’s motion to dismiss or affirm and his motions to strike are overruled.
With instructions to reinstate the verdict and judgment heretofore affirmed by this court, and tax the costs against appellee incident to and upon the trial of the petition for new trial, this cause is reversed and remanded. — Reversed and remanded.
All Justices concur.